Pikutas *v.* Glen Alden Coal Company, Appellant.

Argued September 29, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

58

*J. H. Oliver,* with him *Franklin B. Gelder,* for appellant.

*E. C. Marianelli,* for appellee.

OPINION BY CUNNINGHAM, J., November 10, 1937:

Aside from all technicalities and refinements of construction, the result below of this controversy between the appellant, Glen Alden Coal Company, and one of its injured employees, Joseph Pikutas, is that by the judgment appealed from appellant is required to pay Pikutas compensation, at the maximum rate for total disability, from January 3, to February 6, 1935, although, under the employee's own testimony, his disability finally ceased on January 3, and he returned to his former employment at full wages upon that date and, so far as the record discloses, is still engaged therein. As compensation payments "are intended as a substitute for wages," (*Zimmer v. Closky et al.,* 122 Pa. Superior Ct. 142, 186 A. 403,) there is something radically wrong with that result. There is no suggestion in this case of any diminution of earning power by reason of the injury. It seems to us incredible that the legislature ever intended that an employee, who has not suffered any of the "permanent injuries" specified in Section 306(c) of our Workmen's Compensation Act, 77 PS § 513, as the result of an accident in the course of his employment and has no disability whatever from a non-permanent injury, should be entitled to receive both compensation and wages from his employer for

even the comparatively short period of time here involved.

The controversy arose out of a petition, filed February 6, 1935, by appellant, under Section 6 of the amendatory Act of April 13, 1927, P. L. 186, 194, 77 PS §§ 772-774, further amending Section 413 of the original Act of June 2, 1915, P. L. 736, for the termination of an original compensation agreement upon the ground that the disability of the employee mentioned therein had finally ceased on December 6, 1934. Pikutas suffered an injury to his right leg on September 21, 1934, while in the course of his employment in one of the company's collieries. An open compensation agreement was executed between the parties and approved by the board; it provided for compensation payments, at the rate of $15 per week, from September 29, 1934, so long as the employee's disability should continue—subject, of course, to the limitations of the statute. The company, having been advised by its physician that the employee was able to return to work on December 6, 1934, paid him compensation under the agreement up to that date and requested a final receipt. Pikutas refused to give a final receipt because he found, after working one day, that he could not continue. He then placed himself under the care of a physician of his own selection.

The petition for termination averred that Pikutas had so far recovered from his injuries that he was able to resume work on December 6, 1934. In his answer he denied this averment and alleged that his "disability continued from December 6, 1934, to January 3, 1935, when he fully recovered."

The issue thus framed was referred to a referee who conducted several hearings. It is not necessary, for present purposes, to review the testimony at these hearings. There was abundant competent evidence to sustain the subsequent finding of the referee that the employee's disability did not finally cease until January 2, 1935. Both Pikutas and his own physician testified

positively that he had fully recovered by January 2; that he was entirely able to return to work, as he did, the following day and has "worked ever since."

The finding made by the referee and approved by the board and upon which judgment was entered by the court below reads: "That since the claimant was unable to return to work prior to January 3, 1935, and properly pursue the duties of his occupation, the compensation agreement should not be terminated prior to said date, *and since the petition of the defendant for the termination of the compensation agreement was not filed until February 6, 1935, compensation should be paid until such latter date* when compensation agreement should be finally terminated." (Italics supplied.) Appellant was accordingly ordered to pay the compensation specified in the agreement from December 6, 1934, to February 6, 1935, with interest upon each installment from the date upon which it should have been paid.

If the award had ended as of January 3, 1935, a judgment entered thereon would have been unhesitatingly affirmed. The testimony at the hearings demonstrated that appellant was not justified in discontinuing payments on December 6, 1934, but the penalty contemplated by the statute is that it be required to pay interest upon the installments which should have been paid between December 6, 1934, and January 3, 1935. Payment of those installments with interest is, in our opinion, the extent of its obligation under the facts disclosed by this record.

The compensation authorities and the court below endeavored to justify their conclusion that appellant is also liable for compensation up to February 6, 1935, upon the theory that an employer may be penalized to the extent of paying both compensation and wages from the time an injured employee is able to, and does, return to work at full wages until the date upon which it files its formal petition for termination of an agreement or an award. In support of their contention they quote the

general language from several decisions of this court but ignore the factual situations in the cases they cite. For instance, the following is taken from *Furman v. Standard Pressed Steel Co. et al.,* 111 Pa. Superior Ct. 44, 48, 169 A. 243: "The law does not contemplate that an employer can terminate an agreement simply by refusing to pay under it, or that at the end of a year after such refusal the employee's rights are gone. If just cause for terminating the agreement exists, the Act supplies a remedy to the employer in case of the unreasonable refusal of the workman to sign a final receipt, but it does not make the employer both litigant and judge. So long as he has taken no step to terminate the agreement it remains in force even though he has discontinued payments under it. . . . . . ."

That, however, was a case in which the actor in the proceedings was the claimant who had filed a petition to review a compensation agreement for partial disability upon the ground that it did not fully cover the injuries sustained by him; the employer had arbitrarily stopped paying compensation and had never filed a petition for termination. The claimant had returned to work on June 17, 1927, and the compensation agreed upon for partial disability had been paid up to October 24 of that year; the employer then notified him it would pay no more compensation and tendered a final receipt, which he refused to sign. Several years later the claimant filed his petition to modify and review the agreement. The compensation authorities and the court below held he was not entitled to have the amount specified in the agreement increased, but that the agreement was still in force and ordered payment of compensation in accordance with its terms. In affirming this action, KELLER, J., (now President Judge) pointed out that the employer had taken the position that because it notified the claimant it would not pay him any more compensation, and tendered him a final receipt, the compensation agreement was to all intents and purposes ended.

In rejecting this contention the language above quoted was used, but the board seems to have overlooked a portion of the opinion, appearing at page 46 and reading:

"If the employer was entitled to have the compensation agreement terminated and the employee refused to give a final receipt, it could present its petition to the board asking to have the agreement terminated, and the action of the board unappealed from would be binding on both parties. Until it did so the agreement was only in abeyance, not ended."

It is equally true in the case at bar that the refusal of appellant to pay compensation after December 6, 1934, did not "end" the agreement. As held in the case cited, the agreement was in "abeyance" until appellant filed its petition for termination.

*Zimmer v. Closky et al.,* supra, is another case cited below, but it is not applicable here. There, the employer also arbitrarily stopped making payments on June 18, 1935, and took no action to have the award terminated until after the claimant had entered judgment for the amounts which had accrued subsequent to that date. In affirming the refusal of the court below to open the judgment this court said: "Under the law the filing of a petition to terminate an award acts as a supersedeas as to further payments of compensation under the award—or so much thereof as is contested—until the proceeding is determined, but it does not *require* the court to stay and open a liquidated *judgment* on the award entered before the petition to terminate was filed."

Moreover, we think the conclusion reached below in this case is directly in conflict with the following provision of Section 413, as amended, supra: "Such modification, reinstatement, suspension, or termination *shall be made as of the date* upon which it is *shown* that the *disability* of the injured employee has increased, decreased, recurred, or has temporarily or *finally ceased.*" (Italics supplied.)

We are not to be understood as holding that an employer may delay indefinitely the filing of a petition to terminate, even where the employee admits complete recovery and has returned to work at full wages. *Zimmer v. Closky et al.,* supra, is an example of what may happen to an employer who has been too dilatory. The employer who totally discontinues payments under an agreement or award without first filing a petition and obtaining the benefit of the statutory supersedeas provided for in the section takes the risk of being able to justify such discontinuance by proving before a referee that the employee's disability had ceased at or before the time payments were stopped. Where, as here, the employer fails to show it had ceased as of the date payments were discontinued, but the proofs do show conclusively that all disability ended within a month thereafter, we see no justification for making the employer pay compensation beyond the date fixed by a referee as the time at which all disability totally and finally ceased.

It should also be noted in this case that the matter of the ability of Pikutas to return to work was in controversy from December 6, 1934, until he actually did resume his employment on January 3, 1935. The petition for termination was, in our opinion, filed within a reasonable time from the latter date. The agreement was in abeyance from and after December 6, 1934, and when terminated by the compensation authorities should have been terminated in accordance with the express direction of the statute, i. e., "as of the date upon which it [was] shown that the disability of the injured employee......finally ceased"—January 3, 1935. The judgment should be reduced accordingly.

Judgment modified and as modified affirmed.